UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | MAGISTRATE NO. 21-MJ-469 (RMM) |
| | : | |
| BRIAN CHRISTOPHER MOCK, | : | |
|    Defendant. | : | |

### REPLY TO DEFENDANT'S RESPONSE TO UNITED STATES' MOTION FOR EMERGENCY STAY AND REVIEW OF RELEASE ORDER

The defendant is correct that *Munchel* requires the government to demonstrate that he presents a continuing "identified and articulable threat to the community" now that the "specific circumstances of January 6 have passed." *United States v. Munchel*, 991 F.3d 1273, 1282, 1284 (D.D.C. 2021). Such a finding of dangerousness must be predicated on a finding that a defendant "in fact pose[s] a threat of committing violence in the future." *United States v. Owens*, No. 21-CR-286 (BAH), 2021 WL 2188144, at *6 (D.D.C. May 28, 2021) (citing *Munchel*, 991 F.3d at 1284). There are three reasons that Mock's particular circumstances make him a continuing threat of danger to the community.

<u>First, Mock's criminal record</u>. Unlike some of the defendants who engaged in violence on January 6, Mock has a criminal history. His criminal history involves two separate acts of violence: holding a gun to kids' heads and aggressively shouting at them, and shoving a bystander who tried to help. In *Owens*, which Mock relies upon heavily in his response, this Court cited Owens's spotless criminal record as a mitigating factor weighing in favor of release. *United Owens*, 2021 WL 2188144 at *10. The Court also noted that Owens, a 21-year-old

1

college student, did not have a history of violence. *Id.* The same cannot be said for Mock.

Mock's criminal history sets him apart from other cases on which he relies, as well. This Court noted that none of the three defendants in *Gossjankowski*, *Blair, and Leffingwell,* had any discernible criminal or violent history. *Owens*, 2021 WL 2188144 at *11. Mock's criminal record shows that he is capable of engaging in violent activity without the presence of an angry mob "intent on disrupting a lawful democratic and constitutionally-mandated process," *Owens*, 2021 WL 2188144 at *9, because that's exactly what he did in 2009.

Second, Mock's social media posts. It's true that Mock did not wear tactical gear to the Capitol, and there is no evidence that Mock brought or carried a dangerous weapon to Washington D.C. But that does not mean Mock was not intent on engaging in violence. Evidence on his social media posts, both before and after the riot, show that he planned or at least expected to engage in violence at the Capitol. Mock said goodbye to his four children and admitted he was "not sure if [he] was going to come home." Mock made references to "war" and said he would "fight with the ferocity and righteousness of a thousand angels…". He told others on Facebook to "Fight back, support those who do, get the hell out of the way or prepare to defend yourself." It's clear that Mock expected to—and did—engage in violence at the Capitol. That intention further sets him apart from the defendants in *Owens, Gossjankowski, Blair, and Leffingwell*. *Owens*, 2021 WL 2188144 at *11. With respect to *Owens* in particular, this Court found it noteworthy that Owens did not appear to have come to the Capitol prepared for conflict. *Id*. at *8. Mock not only expected and prepared for conflict, he bragged about it on his return home, telling close associates that he "beat the sh*it out of officers."

Mock's actions on that day also reflect an intention to engage in violence with law enforcement. "Intentional and purposeful assaultive conduct, particularly involving multiple

incidents of directly provocative and aggressive, threatening actions toward police, particularly combined with verbal threats before, during or continuing after that date, are all indicia of dangerousness that may warrant pretrial detention." *Owens,* 2021 WL 2188144 at *12 (citing *United States v. Padilla*, No. 21-214 (JDB), 2021 WL 1751054, at *4–5). Mock's first assault, involving shoving and what appears to be kicking, happens quickly and is hard to catch on the video without slowing it down or watching frame-by-frame. (Government's Exhibit A at the original detention hearing). But what happens after the assault is crystal clear and almost just as alarming. (*Id*.). Mock stands at the front of an angry mob yelling at officers and pointing, screaming "Get out! Go." (*Id*.). He shouts so aggressively that a fellow rioter felt the need to hold him back. That rioter holds Mock by the arm to keep him from advancing toward the officers once more. But that doesn't stop Mock, he goes back for more a few minutes later and violently shoves another officer, which is caught on the second body-worn camera clip. (Government's Exhibit E at the original detention hearing). That Mock assaulted another officer almost five minutes after assaulting the first shows that he had time to pause and reflect on his actions but chose to keep going.

  <u>Third, Mock's threats to a witness after the riots</u>: Mock threatened the woman who went with him to the Capitol and told her he would "make her life hell" if she identified him to law enforcement. He may not have explicitly threatened violence, but taken together with his history of violent conduct both before and at the Capitol, Mock's words raise significant concerns about his willingness and ability to threaten or at least intimidate witnesses.

Mock's criminal history, social media postings, conduct at the Capitol, and threats to witnesses all show that is a continued threat to the safety of the community. For all of the reasons contained in the government's emergency motion for a stay and for review of the release order, Mock's circumstances "warrant this exceptional treatment" of pretrial detention. *Munchel*, 991 F.3d 1285.

                                    Respectfully submitted,

                                    CHANNING D. PHILLIPS
                                    ACTING UNITED STATES ATTORNEY

                                    s/Amanda Jawad
                                    Amanda Jawad
                                    Assistant United States Attorney
                                    District of Columbia Detailee
                                    N.Y. Bar 5141155
                                    U.S. Attorney's Office
                                    211 W. Fort Street
                                    Detroit, MI 48226
                                    (313) 226-9116
                                    amanda.jawad@usdoj.gov

Date: June 18, 2021